IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| SONJA E. HAND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.: 1:10-cv-515-TFM |
| | ) | [wo] |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Sonja E. Hand ("Plaintiff" or "Hand") filed an application for Social Security

disability insurance benefits on May 17, 2004, for a period of disability which allegedly

began January 1, 2002.  (Tr. 46-49).  Hand testified at a hearing before an Administrative

Law Judge ("ALJ") on July 12, 2005.  (Tr. 244-76).  The ALJ issued an unfavorable

decision on December 1, 2005. (Tr. 12-20).  On April 12, 2007, the Honorable Judge

Susan Russ Walker issued an opinion remanding the case "to determine whether

plaintiff's noncompliance with her physician's recommendation to quit smoking is

justified and, if so, whether the limitations caused by her [chronic obstructive pulmonary

disease (COPD)] preclude her performance of her past relevant work or other work."  (Tr.

333-342).  The Appeals Council remanded the action back to the ALJ on May 17, 2007.

(Tr. 343-44).  Hand's second hearing before an ALJ was held on October 4 , 2007.  (Tr.

538-63).  The ALJ again issued an unfavorable decision on February 22, 2008.  (Tr. 307-

22)  Once the Appeals Council rejected review, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner").[1]  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  The Court has jurisdiction over this lawsuit pursuant to 42 U.S.C. § 405(g) and the parties consent to the undersigned rendering a final judgment in this lawsuit pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1. For the reasons that follow, the Court AFFIRMS the Commissioner's decision.

## I. NATURE OF THE CASE

Hand seeks judicial review of the Commissioner's decision denying her application for disability insurance benefits and supplemental security income.  United States District Courts may conduct limited review of such decisions to determine whether they comply with applicable law and are supported by substantial evidence.  42 U.S.C. § 405 (2006).  The Court may affirm, reverse and remand with instructions, or reverse and render a judgment.  *Id.*

## II. BACKGROUND

Hand was born on December 5, 1942.  (Tr. 46).  In the December 1, 2005 decision, the ALJ found Hand to have the following severe impairments: "chronic obstructive pulmonary disease, gastroesophageal reflux disease, degenerative disc disease, osteoarthritis, and possible claudication in the lower extremities."  (Tr.17, 333).  The

---

[1] Pursuant to the Social Security Independence and program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred tot he Commissioner of Social Security.

medical evidence presented to the ALJ prior to the July 12, 2005 hearing included the

"Family Practice Clinic for general medical concerns since 2000;" poor circulation visits

in November 2001; bronchitis visit on May 4, 2002 to Dr. Michael O'Brien, M.D.;

treatment for COPD from November 22, 2002 through November 24, 2003; as well as

testing and treatment for  hypertension and blood sugar control during this time.  (Tr. 13).

Other medical treatments considered at that time were for lower back pain on March 25,

2004; diabetic screening with negative results on November 3, 2004; and pain treatment

for left hand, hip, and knee on June 6, 2005.  (Tr. 13-14).  More detail was given to the

cardiology consultation by Dr. J. Benjamin Craven, M.D., on March 8, 2001; the

treatment of a "severe grade four ulcerative esophagitis associated with a hiatal hernia"

by Dr. John Moore, M.D., on August 13, 2002; and the "fracture to the right ankle and

left ankle sprain treated by Southern Bone & Joint Specialists on October 17, 2003, which

lead to the discovery of back pain on May 31, 2004, as well as the treatment for possible

claudication in her buttocks in June 2004.  (Tr. 14).  The evaluation done on November 4,

2003, by Dr. Dale Prophet, M.D., upon request of Dr. O'Brien, focused on the fact that

"[c]laimant stated that she had smoked a pack of cigarettes per day since she was 17 years

old" and lead to a number of pulmonary specialists to perform several spirometry

examinations and the subsequent treatments between October 2003 and March 2004.  (Tr.

14-15).  The ALj had records from the hospitalization on November 12, 2003 at the

Southeast Alabama Medical Center for "severe shortness of breath and wheezing."  (Tr.

15).  Hand again went to the hospital on April 7, 2004 and was discharged with a diagnosis of pneumonia four days later.  (Tr. 15).

After the remand order, at the second hearing all affidavits and medial information previously provided by Hand were adopted and incorporated into the record of evidence. (Tr. 310).  Additional medical evidence considered in the February 22, 2008 decision included treatment for left hand, hip, and knee by Dr. Kurtis W. Eaton on June 20, 2005 through October 20, 2005 wherein she went through a "surgery for left de Quervain's tenosynovitis." (Tr. 310).  After the surgery, Hand was informed that she had an abnormal electrocardiogram and that she had suffered a heart attack.  *Id*.  A Persantine stress test was conducted on October 27, 2005 with negative results.  *Id*.  Ongoing treatment by Dr. Eaton was done for sinusitis on November 14, 2005, for cramping in her feet on January 10, 2006, and treatment with Dr. Charles M. Beverly, M.D., for urinary incontinence on February 2, 2006 through March 9, 2006.  (Tr. 310-11).  Treatment for neck and back pain from Dr. William B. Hanson, M.D. from March 10, 2006 through May 3, 2006 after which she was referred to Dr. Timothy M. Haley and Dr. Donald A. Deinlein for consultation, examination, and treatment.  (Tr. 311-12).

Hand was also seen by Dr. Robert Harris, a State agency medical consultant, who "concluded that the claimant was able to perform work activities at the light exertional level," with limitations.  (Tr. 312).  Hand started her treatment with Dr. Nelson S. Gwinn, III, M.D., a cardiologist, on August 16, 2006 until the final record considered from Dr.

Gwinn of April 5, 2007.  (Tr. 312-14).  During that time Hand underwent heart catheterizations, suffered from heart palpitations and discomfort, as well as epigastric pain and shortness of breath.  *Id*.  EKGs showed normal results, but Hand's doctors prescribed numerous types of medicine during this period of time.  *Id*.

### III. STANDARD OF REVIEW

The Court reviews a social security case to determine whether the Commissioner's decision is supported by substantial evidence and based upon proper legal standards. *Hand v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997).  The Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner," but rather it "must defer to the Commissioner's decision if it supported by substantial evidence."  *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)); *see also Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (stating the court should not re-weigh the evidence). The Court must find the Commissioner's decision conclusive "if it is supported by substantial evidence and the correct legal standards were applied."  *Kelly v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999) (citing *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997)).

Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.

*Hand v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *Richardson v. Perales*,

402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) and *MacGregor v.*

*Bowen*, 785 F.2d 1050, 1053 (11th Cir. 1986)); *Foote*, 67 F.3d at 1560 (citing *Walden v.*

*Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401, 91 S.Ct.

at 1427).

If the Commissioner's decision is supported by substantial evidence, the district

court will affirm, even if the court would have reached a contrary result as finder of fact,

and even if the court finds that the evidence preponderates against the Commissioner's

decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).  The district court

must view the record as a whole, taking into account evidence favorable as well as

unfavorable to the decision. *Foote*, 67 F.3d at 1560 (citing *Chester v. Bowen*, 792 F.2d

129,131 (11th Cir. 1986)).

The district court will reverse a Commissioner's decision on plenary review if the

decision applies incorrect law, or if the decision fails to provide the district court with

sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton*

*v. Dep't of Health and Human Serv.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (internal

citations omitted).  There is no presumption that the Secretary's conclusions of law are

valid. *Id.; Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).

#### IV. STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB")

provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.[2]  *See* 42 U.S.C. § 423(a).  The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program.  SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line.[3]  Eligibility for SSI is based upon proof of indigence and disability.  *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C).  Despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled.  *Patterson v. Bowen*, 799 F.2d 1455, 1456 n. 1 (11th Cir. 1986).  Applicants under DIB and SSI must provide "disability" within the meaning of the Social Security Act which defines disability in virtually identical language for both programs.  *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a).  A person is entitled to disability benefits when the person is unable to:

> Engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected to result

---

[2] DIB is authorized by Title II of the Social Security Act, and is funded by Social Security taxes.  *See* Social Security Administration, Social Security Handbook, § 136.1, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

[3] SSI benefits are authorized by Title XVI of the Social Security Act and are funded by general tax revenues.  *See* Social Security Administration, Social Security Handbook, §§ 136.2, 2100, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

in death or which has lasted or can be expected to last for a continuous
period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is one

resulting from anatomical, physiological, or psychological abnormalities which are

demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42

U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner of Social Security employs a five-step, sequential evaluation

process to determine whether a claimant is entitled to benefits.  *See* 20 C.F.R. §§

404.1520, 416.920 (2010).

> (1)    Is the person presently unemployed?
> (2)    Is the person's impairment(s) severe?
> (3)    Does the person's impairment(s) meet or equal one of the specific
>        impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?[4]
> (4)    Is the person unable to perform his or her former occupation?
> (5)    Is the person unable to perform any other work within the economy?
> An affirmative answer to any of the questions leads either to the next
> question, or, on steps three and five, to a finding of disability.  A negative
> answer to any question, other than step three, leads to a determination of
> "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The burden of proof rests on a claimant through Step 4.  *See Phillips v. Barnhart*,

357 F.3d 1232, 1237-39 (11th Cir. 2004).  Claimants establish a prima facie case of

qualifying disability once they meet the burden of proof from Step 1 through Step 4.  At

Step 5, the burden shifts to the Commissioner, who must then show there are a significant

---

[4] This subpart is also referred to as "the Listing of Impairments" or "the Listings."

number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC). *Id*. at 1238-39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id*. It also can contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[5] ("grids") or hear testimony from a Vocational Expert (VE). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Id.* at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

## V. STATEMENT OF THE ISSUES

Plaintiff alleges the ALJ committed three errors. (Pl. Br. at 1). First, Plaintiff argues "the Commissioner erred by failing to properly evaluate Ms. Hand's residual functional capacity." *Id*. Second, Plaintiff argues "the Commissioner's credibility

---

[5] *See* 20 C.F.R. pt. 404 subpt. P, app. 2; *see also* 20 C.F.R. § 416.969 (use of the grids in SSI cases).

finding is [not] based on substantial evidence."[6]  *Id*.  Finally, Plaintiff argues "the Commissioner erred in failing to properly comply with the Appeal Council's remand order."  *Id*.  The issues and arguments Hand raises turn upon this Court's ultimate inquiry of whether the Commissioner's disability decision is supported by the proper legal standards and by substantial evidence.  *See Bridges v. Bowen*, 815 F.2d 622, 624-25 (11th Cir. 1987).

## VI. DISCUSSION AND ANALYSIS

**A.     The ALJ correctly evaluated Hand's Residual Functional Capacity.**

The ALJ found that Hand has the Residual Functional Capacity (RFC) "to perform at least a partial range of light exertional work, in function-by-function physical terms (SSRs 83-10 and 96-8p)."  (Tr. 315).  The RFC is an assessment done by the ALJ, based on all of the relevant evidence, including age, education, and work experience, of a claimant's remaining ability to do work despite their impairments.   20 CFR § 404.1545(a), and 20 CFR § 404.1520(f).  "The determination of residual functional capacity is within the authority of the ALJ and the assessment should be based upon all the relevant evidence of a claimant's remaining ability to do work despite her impairments."  *Beech v Apfel*, 100 F.Supp.2d 1323, 1331 (S.D. Ala. 2000) (citing 20 CFR § 404.1546, *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)).

---

[6]The original text in the Plaintiff's Brief presented the issue as "[w]heather the Commissioner's credibility finding is based on substantial evidence."

The ALJ first addresses the issue of the RFC when establishing the procedural steps that must be accomplished throughout the entirety of the opinion.  (Tr. 307-09).  After establishing the fact that Hand met the insured status requirements and had not been substantially gainfully employed, the ALJ established that Hand had several severe impairments.  (Tr. 309-10).  In finding that Hand suffered from Chronic Obstructive Pulmonary Disease (COPD), peripheral vascular disease, mild degenerative changes of the lumbar spine, cervical spondylosis, and small-vessel ischemic coronary artery disease the ALJ performed a very thorough chronological review of the medical evidence presented by the plaintiff.  (Tr. 310-14).  The ALJ considered the three-pronged standard for evaluating pain and/or other symptomatology as set for by the Eleventh Circuit in *Wilson, v. Barnhart*, 284 F.3d 1219, 1225 (2002), and then found that Hand had no impairment or combination of impairments that met or medically equaled one of the listed impairments.  (Tr. 314-15).  At this point, the ALJ began to assess the RFC and spent the following six pages of the opinion articulating why Hand could perform partial range of light exertional work.  (Tr. 315-20).

The ALJ considered the entire record as well as the specific limitations of light work as well as sedentary work under 20 CFR § 404.1567(b).  (Tr. 315).  While the ALJ did state "the specialized physical State agency medical source statement has been considered the most probative for purposes of establishing the residual functional capacity herein corroborated by the underlying medical evidence," this was done because

"[t]here have been no examining or treating medical source opinions or record."  *Id.*
While silence by medical records should not be taken as an implicit reference that a
claimant is capable of working, the lack of medical source opinions provides justification
for the ALJ's reliance on the State agency medical source statement.  *See Lamb v. Bowen*,
847 F.2d 698, 703 (11th Cir. 1988) (wherein a treating physician opined that the claimant
could not return to his former employment but only addressed the former employment.
The Eleventh Circuit noted that "[s]uch silence is equally susceptible to either inference,
therefore, no inference should be taken").

A "claimant's subjective testimony supported by medical evidence that satisfies the
[pain] standard is itself sufficient to support a finding of disability." *Brown*, 921 F.2d at
1236. "Indeed, in certain situations, pain alone can be disabling, even when its existence
is unsupported by objective evidence."  *Foote*, 67 F.3d at 1561.  "When evaluating a
claimant's subjective symptoms, the ALJ must consider the following factors: (i) the
claimant's 'daily activities; (ii) the location, duration, frequency, and intensity of the
[claimant's] pain or other symptoms; (iii)[p]recipitating and aggravating factors; (iv) the
type, dosage, effectiveness, and side effects of any medication the [claimant took] to
alleviate pain or other symptoms; (v) treatment, other than medication, [the claimant]
received for relief ... of pain or other symptoms; and (vi) any measures the claimant
personally used to relieve pain or other symptoms.'" *Leiter v. Comm'r of Soc. Sec.
Admin.*, 377 Fed. Appx. 944, 947 (11th Cir. 2010) (quoting 20 C.F.R. §§ 404.1529(c)(3)

& 416.929(c)(3)).  The ALJ considered all of these factors and found that the pain alleged by Hand alone was not sufficient to be considered one of the other "severe" impairments required by § 12.05(C).

Hand argues that the ALJ failed to fully develop the claimant's record without a medical opinion from the claimant's treating physician, and did not discuss in any detail the factors he laid out to determine the claimant's credibility as to her ability to perform the duties of light work.  (Pl. Br. 8).  As stated above, the ALJ cited that the absence of medial opinion from the treating physician is partial justification as to the weight of the opinion of the state agency report.  (Tr. 315).  Furthermore, "[t]he claimant [] bears the initial burden of proving that she is unable to perform her previous work."  *Lucas v. Sullivan*, 918 F.2d 1567, 1571 (11th Cir. 1990) (citing *Cannon v. Bowen*, 858 F.2d 1541, 1544 (11th Cir. 1988)).  Hand had two opportunities to submit any opinion evidence from a treating physician to the ALJ and failed to do so.  The ALJ therefore reasonably relied upon the reports and medical evidence he had before him at that time.  The ALJ was justified to rely upon the lack of evidence and demonstrated through detailed discussion the factors the ALJ relied on to determine credibility.  (Tr. 316).  While the credibility factors are not numbered one through seven, the credibility factors are taken from her daily activities; the location, duration, and frequency of her pain (Tr. 317-18); medications and treatment for the pain/impairment; as well as the many different treatments and measures taken, other than medication.  (Tr. 317-18).  All the factors are

addressed by the ALJ in the subsequent analysis to demonstrate his credibility finding are supported by substantial evidence.  (Tr. 317-18).

In finding Hand was not credible regarding the impact of her conditions the ALJ stated:

> The credibility of the claimant's testimony remained at issue so long as the allegation of disability was asserted.  While a portion of the claimant's testimony did not directly relate to matters which were by themselves material to a specific finding of credibility, nonetheless certain aspects of this case, discussed herein, were central to the determination whether the claimant has had limitations which would have likely precluded the ability to conduct all past relevant work.  Finding of credibility in this case has not meant to state that the person of the claimant has been simply credible or not.  It has entailed by best judgment as a trier-of-fact where allegations by degree were examined in light of the whole record.

(Tr. 318).

In concluding his assessment, the ALJ stated "[b]ased on review of the medical evidence of record, as well as the claimant's testimony at the hearing, the undersigned finds that the preponderance of the evidence contained in the record does not support the allegations of totally incapacitating pain and other symptoms."  (Tr. 320).  The Court finds that the RFC rating is supported by substantial evidence.

**B.     The credibility finding by the ALJ is supported by the substantial weight of the evidence.**

Hand argues the ALJ's credibility finding is not based on substantial evidence.  (Pl. Br. 1).  The ALJ articulates sufficient facts to appoint a proper finding of lack of credibility in Hand.  Consequently, the ALJ's findings regarding Hand's testimony are supported by substantial evidence.

The Eleventh Circuit stated "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision so long as [his] decision . . . is not a broad rejection which is 'not enough to enable [a court] to conclude that the ALJ considered [a claimant's] medical condition as a whole.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (quoting *Foote*, 67 F.3d at 1561).   In *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir. 1983), the Eleventh Circuit held "this circuit does not require an explicit finding as to credibility," but will accept the implications which are obvious to the reviewing court. It is the duty of the ALJ to develop a full and fair record.  *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003).   A full and fair record enables the reviewing court "to determine whether the ultimate decision on the merits is rational and supported by substantial evidence." *Welch v. Bowen*, 854 F.2d 436, 440 (11th Cir.1988) (internal quotations and citations omitted).  This Court will reverse when the ALJ has failed to "provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted." *Keeton*, 21 F.3d at 1066.

The pain standard has been maintained as:

In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson*, 284 F.3d at 1225 (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). The burden of proving disability rests on the claimant, and the claimant is responsible for

producing evidence that supports her claim and allows both the ALJ and the Commissioner to reach the proper conclusion.  20 C.F.R. § 416.912(a).  Once again, "a clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court."  *Foote*, 67 F.3d at 1562 (citing *MacGregor*, 786 F.2d at 1054).

The Court recognizes that "participation in every day activities of short duration, such as housework or fishing, [do not] disqualif[y] a claimant from disability."  *Lewis*, 125 F.3d at 1441; *see also Vennette v. Apfel*, 14 F.Supp.2d 1307, 1314 (S.D. Fla. 1998) (wherein the court observed that housework, light cooking, and light grocery shopping are minimal daily activities and "are not dispositive evidence of one's ability to perform sedentary work in a Social Security case." quoting *Walker v. Heckler*, 826 F.2d 966 (11th Cir. 1987)).  However, the Eleventh Circuit has held that a court must consider the entire record when determining whether the evidence of a claimant's daily activities is substantial evidence for the conclusion that she retains the residual functional capacity to work.  *Foote*, 67 F.3d at 1561; *see also Parker v. Bowen*, 793 F.2d 1177, 1180 (11th Cir. 1986) (holding that when considering daily activities the entire record must be considered).

If an ALJ offers clear, cogent reasons for the credibility determinations made, then no reversible error in discounting the claimant's subjective complaints of pain has occurred.  *Petteway v. Comm'r of Soc. Sec.*, 353 Fed. Appx 287, 289 (11th Cir. 2009) (citing to *Dyer*, 395 F.3d at 1210).

Hand argues that because there was a hospitalization for several days that the

credibility finding is in error.  (Pl. Br. 10).  However, the ALJ noted that the treatment of Hand, over the entirety of the medical records provided by plaintiff, were routine and conservative in nature.  (Tr. 319).  The Court is cognizant that the ALJ may consider conservative treatment to discredit or discount a claimant's testimony.  *Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996) (where the court found "substantial evidence to support the ALJ's decision to discredit [plaintiff's] testimony regarding impairments" based on the conservative nature of the treatment).

The Court recognizes that the ALJ may use his discretion to decide the weight to assign to testimony from Hand about pain and other symptoms so long as the ALJ articulates the reasons for that decision.  *See Holt*, 921 F.2d at 1223 (wherein the court held that because the ALJ did not set out why the testimony was discredited, the complainants testimony was held to be true).  Yet generally, the Court will not reverse credibility findings of an ALJ.  In the exercise of discretion, the ALJ must articulate the reasons for discrediting the witnesses testimony.  *See Jones v. Dep't. of Health and Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (stating that the ALJ must give reasons that are based on substantial evidence if he chooses to discredit the claimant's testimony).

The ALJ discussed the inconsistencies within the medical records as well as the testimony of Hand in that her credibility is undermined because of the reason she left her last job.  (Tr. 320).  The ALJ made a specific finding that Hand stopped working her last full-time employment not because of any disabling impairment but rather because of lay offs

occurring at her place of employment.  (Tr. 320).  This too directly impacted Hand's credibility regarding the overall disabling impact of her impairments.  *See Potter v. Sec'y of Health & Human Servs.*, 905 F.2d 1346, 1349 (discrediting the claimant's testimony when she finally admitted that "she did not leave employment as a result of any health-related impairment, and no physician has stated it was necessary to do so.) (citing to *Gayton v. Sec'y of Health & Human Servs.*, 691 F.Supp. 22, 24 (N.D. Ohio 1988) (where in benefits were denied and it was significant that no treating physician said plaintiff was disabled during relevant period)).  The ALJ noted that no treating physician has stated that Hand was disabled when stating "[i]t is specifically observed by the undersigned that no reviewing, examining, or treating physician or other medical source has provided medical findings or opinions implicitly or explicitly involving the criteria of any applicable listing."  (Tr. 315).

Overall, the ALJ took all factors into consideration and went to great lengths to articulate the finding of no credibility in Hand's testimony.  The ALJ uses the phrase "[a]fter careful consideration of the evidence," signals that the ALJ considered the testimony by Hand in conjunction with the other medical evidence and testimony presented to the ALJ.  The Court finds that the ALJ's findings are supported by substantial evidence.

**C.    The ALJ complied with the orders in the remand.**

Hand argues the ALJ failed to properly comply with the Appeal Council's remand order (Pl. Br. 1), while the Commissioner argues that Hand mistakenly cites to the Appeal Council's order rather than the order by Judge Walker in her remand order.  (Tr. 342).  Judge

Walker said "the court concludes that the decision of the Commissioner is due to be reversed and remanded for further proceedings to determine whether plaintiff's noncompliance with her physician's recommendation to quit smoking is justified and, if so, whether the limitations caused by her COPD preclude her performance of her past relevant work or other work." *Id*. This is identical to the language quoted to by Hand coming from the Appeal Council (Pl. Br. 12) which would have been based on the original order issued by Judge Walker. Functionally, the argument is the same of non-compliance and the Court finds that the ALJ complied with the orders in the remand.

The first reviewing court correctly noted in its opinion and order of remand that "the ALJ made no finding that the plaintiff was actually able to stop smoking but willfully refused to do so." (Tr. 337). In *Seals v. Barnhart*, 308 F.Supp.2d 1241 (N.D. Ala. 2004), the court looked at a similar case of noncompliance regarding a plaintiff who suffered from chronic obstructive pulmonary disease and who failed fo follow her doctor's instructions to stop smoking. In *Seals* the plaintiff's failure to stop smoking was central to the ALJ's determination that Plaintiff was not disabled. *Id*. *See e.g. Stull v. Comm'r of Soc. Sec.*, 2011 WL 861901 (N.D.Ohio) (wherein the court stated "the fact that no physician had ever concluded that plaintiff was disabled even while he was smoking . . ." was one of other evidence in the record other than the noncompliance of the plaintiff to uphold the denial of benefits).

In the first opinion, the ALJ "made no finding that the plaintiff was actually able to

stop smoking but willfully refused to do so." (Tr. 337). However, in the second opinion issued the ALJ states:

> It is observed that the claimant has tried unsuccessfully to quit smoking and that her inability to do so has likely resulted from nicotine addiction as opposed to willful refusal to follow her doctor's instructions. Accordingly, the undersigned has taken into consideration the claimant's pulmonary limitations caused by COPD irrespective of its etiology by including environmental restrictions in the residual functional capacity established above.

(TR. 316). Hand argues that this statement is not enough when she states "[i]n the fifteen pages of the ALJ's decision pursuant to the remand, the ALJ acknowledges both arguments in a blanket paragraph." (Pl. Br. 13). The Court finds that there is no prerequisite length of discussion required of the ALJ in the remand order rather only that the ALJ "determine whether plaintiff's noncompliance with her physician's recommendation to quit smoking is justified." (Tr. 342). The ALJ clearly recognizes that Hand's inability to quit smoking is not a "willful refusal" and therefore not to be considered a noncompliance. (TR. 316).

The first aspect of the remand order was for the ALJ to establish that the noncompliance was justified. (Tr. 342). The second requirement was to determine if "the limitations caused by her COPD preclude her performance of her past relevant work or other work." *Id*. Immediately upon establishing that Hand's noncompliance was not a willful refusal to comply with the physicians' orders, the ALJ embarked on a lengthy two step analysis of impairments and symptoms wherein the ALJ stated:

> [O]nce an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the

undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to do basic work activities. For this purpose, whenever statements about the intensity, persistence, or functional limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record.

(Tr. 316). The ALJ cites to 20 CFR § 404.1529(c) as to the types of evidence to be considered as well as the three-pronged standardized test set out for assessing "pain and/or other symptomatology" in *Wilson*, 284 F.3d at 1225. The ALJ stated that:

"[d]uring the hearing, I was observant of the claimant's demeanor, candor, and consistency of allegations as well as description of activities. I also closely reviewed all the exhibits before me and was aware of the frequency, scope, and type of medical treatment and findings involved, as well as any pertinent medical opinions of record. All of these considerations were taken into account in finding that there was a lack of credibility necessary to establish disability for this individual claimant.

(Tr. 318). Shortly thereafter the ALJ further states:

Although the claimant has received treatment for the allegedly disability impairments, that treatment has been essentially routine an/or conservative in nature. The course of treatment pursued by her doctors has not been consistent with what one would expect if the claimant were truly disabled. Given the claimant's allegations of totally disabling symptoms, one might expect to see some indication in the treatment records of restrictions placed on the claimant by the treating doctors [y]et a review of the record in this case reveals no such restrictions. The record does not contain any opinions from treating or examining physicians indicating that the claimant is disabled or even has limitations greater than those determined in this decision.

(Tr. 319.

Based on credibility finding as well as the residual functional capacity the ALJ found that "[t]he claimant is capable of performing past relevant work." (Tr. 320). This

Page 21 of 22

specifically complies with the second aspect of the remand order to determine if "the limitations caused by her COPD preclude her performance of her past relevant work or other work." (Tr. 342).  While Hand does not agree with the ALJ's overall conclusions this Court finds that the ALJ complied with the remand order and that the conclusions reached were supported by the substantial weight of the evidence.

## V. CONCLUSION

Pursuant to the findings and conclusions detailed in this Memorandum Opinion, the Court concludes that the ALJ's non-disability determination is supported by substantial evidence and proper application of the law.  It is, therefore, ORDERED that the decision of the Commissioner is AFFIRMED.  A separate judgment will be entered.

DONE this 22nd day of September, 2011.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE